Thank you, Your Honors. My name is Daniel Gillespie. I am here for the plaintiffs, Frank Ann and Brittany Wilbur. I'd like to focus on two issues in this case. Could you help me with a preliminary one? I can't figure out why this is in federal court. I would have thought that once the 1983 was dropped that it would get remanded. For that matter, I can't figure out why it was removed to federal court in the first place, since there are all these unsettled questions of state law. Any help for that? I don't have a ton of help for that. That's been a point of curiosity for me, myself, Your Honor. I'd appreciate the other side answering that question when the other side gets up to talk. And I did look into that issue at one point, and there was some authority, and I couldn't give you the site right now, that indicated when you have a pendent jurisdiction case such as this, the federal court can rule on a state law issue. As you point out, it is purely an issue of state law and state law construction. But the federal court does have the authority to rule on this issue. But in some ways it seems that it might be a case that could be ruled on by the state as well. Let me ask you, jumping forward to our retaining this and deciding it, is it your position that on the issue of whether the state is strictly liable for alleged negligence, that we should remand this or send this to the Montana Supreme Court on a certified question to get its answer? Or do you think we ought to just decide? Well, on that specific issue, and setting aside the question on the agency issue, which I think is a separate issue, I mean, I certainly think it would be appropriate for the Montana Supreme Court to decide on the issue of what Montana public policy is. We know it's appropriate. I was watching your pained expression, and I was thinking, does that mean, on the one hand, the Montana Supreme Court sooner or later ought to say, on the other hand, this case there's really not enough money in it to justify the incredible delay and effort that's going to be required for that? No, I wouldn't say it's the second one. The first one, though, there is some concern that if this court were to look at the arguments and make some decision and later on it comes up a similar issue as presented in the Montana Supreme Court, you could have a conflict of the authorities, and it might. No problem there. There's no conflict. If the Montana courts rule one way, that's it. Correct. And so, exactly, and that's what I'm suggesting. It's unsettled up until then. So it might make some sense for the Montana Supreme Court just to. . . Soon we just do whatever we're going to do, and then the Montana Supreme Court in another case involving lots and lots of money could do whatever it wants to. Well, I feel comfortable that this court will render a proper decision in the case. That's reassuring. Thank you so much. Can I ask you this? Is it your theory of the case that a 15-year-old should not be left alone? Our theory of the case is that this particular 15-year-old, under the circumstances around her removal and what was known about her, she should not have been left home alone. It's not that as a matter of law. . . Why is that? Usually you hire 15-year-olds as babysitters. You don't hire babysitters for them. It's hard to keep them from being alone sometimes. Also kind of hard to keep them from texting their boyfriend and come on over because they're alone. It's hard to do that, but at the same time, if you have the child that doesn't break the rules ever, always follows what's been done, hasn't been removed. There aren't any of those. No, where are those? I've never met one. Well, there may be not any in. . . Apparently not in Montana. There are none in Alaska. But every child has a different degree of supervision that they need, and some children do need a higher degree of monitoring, especially when they have a special susceptibility to potentially be. . . I'm remembering 15. My parents had no idea where I was or what I was doing for much of the day. I thought it was that way with all 15-year-olds, whether they get in trouble or not, and all of them do from time to time. It's that way with many 15-year-olds, Your Honor, and I agree. But respectfully, there are some who, especially when it's a specific known danger, and this boy was known to be a threat to this girl, and it was known that it had been in the recent past that he had been trying to commit this act. The parents knew that? The foster parents knew that? The foster parents knew that, and I believe the social worker also knew that, and the parents might have had some level of. . . What is your proposal, that they have a 24-hour guard with her wherever she goes? They're with her? No. They don't let her text? What's your proposal? Well, after this incident occurred, that was exactly what the state ordered for the foster parents to do. Our proposal is that under the circumstances, they could have brought her with on the trip that they had left on that resulted in her being left home alone. They could have taken her cell phone away. They could have left one of their other children there at the house. There's a number of things they could have done. Wait a minute. You talk about the threat to the girl as though this was a TRO situation, to get some sort of restraining order against the boy keeping away from the house because the girl was feeling threatened by him. Actually, as soon as she was alone, she texted him to come on over, and really everybody would have had a very enjoyable afternoon, except she got chlamydia afterwards. Correct. Well, but the issue, though, is that she's 15 years old, and this is an 18-year-old boy, and regardless of what her expressed desires as a 15-year-old are, she doesn't have the legal capacity to consent to a relationship. But she also said that no matter what, this is what she would have done. She had no interest whatsoever in compliance. So either you're going to have to effectively jail her, do things that are extremely difficult with any 15-year-old, or you've got a problem. I have six kids. I get this stuff. I mean, this makes no sense to me, what you're suggesting. If you have a situation where her life is in danger, if there's a known issue that is out of the normal range, I get that. But it sounds to me like you're creating some kind of Orwellian state, and if the foster parents don't do that, then there's something horribly wrong. Well, I mean, respectfully, Your Honor, I don't believe that this incident would have occurred if the child was still in the parents' house. You mean the original parents? The original parents. What evidence do you have of that? I think you're probably right, because the mother would have beat her up again. But that's why the state took her away. Right. But, I mean, the state shouldn't be removing a child and placing her in a separate danger that's greater than what would be with the original parents. So you think that the fact, again, as I understand the fact, the birth mother beats her up. The family, as far as I know, other than not staying with her for three-and-a-half hours, was a model foster situation. Do you have any evidence to the contrary? We don't argue that the foster family, as a general matter, is this specific decision that they made on this day, and I think it's speculative to say that this would have happened anyway. I don't think anybody knows. Well, I know we don't know that, but the point is what we're dealing with here is hopefully common sense. To some degree, this is common law. We're talking about common sense. If you don't have common sense in the law, it never sticks. It doesn't work. And what I'm struggling with is, from my perspective, the lack of common sense of what you're asking for. If I'm wrong, tell me. I want to understand why I'm missing this. Well, I think it's the difference between just having a 15-year-old kid that you know they might rebel and act out, and you've got a 15-year-old kid that's been approached by this 18-year-old. It's known that he's gone up to her. The foster family has confronted this child and said, you stay away from her, she's just jail bait to you. How do you do that? I mean, all the time parents tell kids, boys or girls, you should stay away from that one. That one's trouble, whether it's boy or girl, whether it's underage or not underage, because parents can recognize trouble better than kids can. And the kids don't. What are you going to do? Sometimes they don't, and that might be negligence by the parents. But sometimes the parents instruct them. What you have to do if you're the parent of a kid and you say stay away from that kid and you know they're not likely to, do you have to cuff them to the bed whenever you leave the house? I don't know if you cuff them to the bed, but you create consequences or you leave one of their brothers or sisters home alone. There's a number of things that a parent can do that can prevent this from happening. You've only got 30 seconds left. What is it that they should have been on notice that was a particular risk here? The boyfriend? I'm not sure that he was a boyfriend, but that he had been approaching her and the foster mother actually confronted this boy and was on notice that he was pursuing her, and they should have either brought her with on the trip or left somebody with at the house. When they were gone for an afternoon or whatever. They were gone for an afternoon. They're going to a Mormon thing and she's Presbyterian or something like that, so it would be offensive to bring her on the trip. Well, you leave her in a coffee shop while you're at the trip. Perfect, perfect. And the boyfriend would meet her over there. Well, they were two hours away from that. Okay. Do you have any kids? I do not. Okay. Good luck. Thank you, sir. Okay. Let's hear from the government. May it please the Court, Counsel, my name is Michael King. I represent the state of Montana in this case. And why aren't you in a state of Montana court? Well, I'll tell you. You could remove it. My question is why? And once the 1983 was dropped, why not ask the judge to exercise his discretion to send it back to Montana court? I just don't get why it's in federal court. The Court has noticed that it was removed on the basis of a Section 1983 claim. Yeah, of course. All of us in practice had cases we could have removed, but we thought about whether we should and often decided, maybe always, no. Right. And after the Section 1983 claim was dismissed, that left the state law claims, supplemental state law claims. That's all that was left. I don't know why the district court decided or declined to send them back to state court. Did the state ask the district court to send them back? Neither the state nor the plaintiff asked for a remand to state court. I'm sure if the state had asked, the district court would have considered that heavily in exercising its discretion. It very well could have, yes. But here we are today. The case is still in federal court. It's on the state side. You're all salaried. You don't care if we fool around for another two, three years with certification. Well, I would prefer to the judicial economy take care of this case by having this court resolve it. We're here now. And I think it can. Were we to do that, I assume it would be the state's and, indeed, the other side's preference that we do so in a non-published opinion that would have no precedential value. Then the state can make up its own mind on the general issue at a later point. Does that make sense to you? Well, it does make sense. However, I do think that there is controlling law in this case. Majority, minority views. From other courts, but I'm talking specifically about the state of Montana. Okay. The state of Montana, in terms of let's talk about their non-delegable duty theory first of all. The law in Montana is clear that the state, or in particular the Department of Public Health and Human Services, does not have any kind of duty to take care of the day-to-day supervision of foster children. That duty, to the contrary, has been vested in the foster parents through administrative regulations that the department promulgated and which have never been challenged by it. Maybe I'm missing something, but I don't think there is a dispute about Montana law on that issue. I think the issue was with regard to the strict liability for alleged negligence. That was the only open issue. Did I miss something? Well... The first point, I think you're right. Montana law seems to be relatively clear. But on the second point, I didn't find any Montana case that directly addressed that question. As to whether the state of Montana strictly... Strictly liable for the alleged negligence of the Woods in leaving Brittany home alone for three and a half hours. Well, there's certainly no decision that I'm aware of that has specifically come before the Montana Supreme Court on those facts. But if the issue is whether they were agents of the state of Montana, the foster parents... No, I get that. That part, I think, is pretty clear. Just that one point. I mean, clearly the majority rule is that the state doesn't have a non-delegable duty to make a state strictly liable for injuries to children in foster care. It also has enormous financial implications for any state. But it looks like, at least from what I've seen, California, Illinois, New Jersey, South Carolina, and Louisiana, among others, have said there is no such duty. But I don't find anything in Montana. Do you have a case in Montana that addresses this issue? There is a case. It's called Favish v. PPL Montana, 239 Montana, 289. It is a Montana Supreme Court that's controlling. It is a fact-based... The Montana Supreme Court has a fact-based analysis for whether there's a non-delegable duty. And it held in that case, quite plainly, liability may be based on a non-delegable duty of the owner only when a contractual provision establishes that the owner has assumed responsibility for initiating, maintaining, and supervising safety precautions. Now, that case was decided in a construction context. But I think it controls in other contexts as well. Okay, so I knew of that case. But, again, that construction and foster care are a little different. Well, the point I'm trying to make is that the plaintiffs who have the burden of coming forward with evidence did not present the district court with any contractual provision whereby the state of Montana assumed responsibility for the day-to-day supervision of foster care. And as a result of their failure to come forward with that kind of evidence, there is no non-delegable duty under the controlling Montana cases on the issue. Okay, so this one, even though it's under the Montana Scaffolding Act, you think the principle applies here? I think so, yes. Do we have the contract between the foster parents and the state of Montana in the excerpts? We do not. I overlooked it if it was there. It's not there, and the reason it isn't there is because the plaintiffs haven't pointed to any provision in that contract. The defendants could have put it in. We could have. What I'm kind of suspicious of is that I suspect quite a few states in their contracts with the foster parents give the state unlimited power to manage how the foster parents care for the children. And I would have liked to read the Montana contract to see if it gave the state such extensive power over the details of how the foster parents conduct their care that the foster parents really are employees under the control of the state. And to me it makes me kind of wonder that you didn't put it in. Well, it was never any part of the record. Well, the record gets created by the lawyers. That's true. But the record below didn't include any part of that contract. Exactly. That's why I'm suspicious. Funny the state didn't put it in. Well, I don't know how to respond to that, except that if the plaintiffs would have thought that it could go. Because it's typical for states to reserve that kind of power over foster parents. Well, I'm not sure that I agree with that. I mean, you use Favich to say there's no contract, but then you don't show me there's no contract. There's no declaration there's no contract. That suggests there probably is a contract, and you don't put the contract in the district court record. I understand. My point is simply that the plaintiffs haven't sustained their burden of coming forward with anything in the contract to support their position. For purposes of our court, the reality is it's not there, whether the state should or could or did put it in. Under the circumstances, what are we to make of that? We can't do anything with it, can we? Can we imply that because you didn't put it in that there's something in there that is a problem, or do we draw no inference from that at all? I think you draw no inference from it, because if there was something in it that would support the plaintiff's position, then it was their obligation to come forward with it. They have the burden of coming forward with specific facts to support their theory of this case, and when they fail to do that, I don't think you can draw a negative inference against the moving party. Well, I think what Judge Kleinfeld said is interesting, because he talked about the fact that you cite Favich for the concept that there can't be an undelegable duty, and that deals with a particular act, but if you had something in the contract that would have clarified or bolstered that point on this, you would have put it in. So why can't we draw a negative inference from that? I don't know the answer to that question. It's not an issue that I've researched. You weren't trial counsel, I'm sure, right? Or were you? Well, this case never went to trial. Of course you're right. You're right. You weren't the person who handled it at the trial court level. Yes, I was. Excellent. Yeah. Do we need to go into all of this? I mean, let's suppose that there was some kind of responsibility for the negligence of the foster parents. Would you lose? If the state of Montana had responsibility for the negligence of the foster parents? Yeah. If you assume that the state had responsibility? I'm asking, was there negligence? Oh. We haven't really gotten to that. My position in this case has been that there is no negligence by the foster parents in this case. They didn't breach what their duty was under Montana law, which was to provide age-appropriate supervision for this child. There is no indication through expert testimony or any facts that the plaintiffs have presented that this young woman, young girl, she's now a young woman, was peculiarly susceptible to or wasn't mentally competent enough to be left home alone. Well, apparently they knew that she had a predatory boyfriend. Well, that's their spin on the facts. The actual facts are that the foster mother encountered this boy one day while he was riding around on his bike and asked him if he had seen Brittany. He said, no, but I can ring her up on my phone, which led her to conclude that maybe she was a little closer to this 18-year-old senior than was comfortable for her, so she told him to stay away from him. Is a high school sophomore dating a high school senior? That apparently was the case, and it had been going on according to Brittany's own testimony for about two weeks before this incident occurred. Entirely normal situation, wouldn't you say? I would agree with that, but for the fact that he obviously was 18 and she was 15, and that creates a little problem. Maybe the high school senior. He's a high school senior. So, no, I don't think that any evidence of negligence was presented by the plaintiffs in this case, any more than they presented any evidence of vicarious liability. And what's more, if we focus on the causation issue that they also have an obligation to present evidence on, and I think the court recognized this in the questioning of Mr. Gillespie, it's sheer speculation that had she been left home alone that this incident wouldn't have occurred. Previously, she had snuck out of the house, not snuck out of the house, but told her foster parents she was going one place and then went to visit this guy at his house. She wasn't so restricted in her freedom that she couldn't have done that in any event. And so to say that had she been left home with a family member or a babysitter that they wouldn't have said, you can go to the gym, and then she would have snuck off to see Mr. Watts is, again, speculation. And as the court knows, speculation isn't sufficient to establish the causation element of negligence. We appreciate the argument of both counsel. Thank you very much. The case of Wilbur v. State of Montana is submitted. Thank you very much. The next case for argument is Derrick Johnson v. U.S. Bancorp.
judges: Schroeder, Kleinfeld, Smith